# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

UNITED STATES OF AMERICA   )
                             )
v.                                )     Case No.   CR413-163
                             )
ANTONIO LAMAR HAMPTON   )

## REPORT AND RECOMMENDATION

In this drug conspiracy case defendant Antonio Hampton has moved to suppress all evidence seized from his person and vehicle on the theory that his initial detention by the police rested not on probable cause but merely on reasonable suspicion, and thus while the officers who seized him were permitted to pat him down for weapons during an investigatory stop, they went too far by removing items from his pockets (a wad of cash and a set of keys) that they knew from their patdown not to be weapons. Although defendant concedes that the officers gained probable cause to arrest him within moments of this alleged illegality, he contends that they acted prematurely in conducting a non-protective search before that

probable cause came to light. The unrebutted evidence at the suppression hearing furnishes multiple grounds for the rejection of this strained argument.

It is uncontested that after CNT agents made controlled purchases of drugs from a person who resided at 2106 Mell Street,[1] they obtained a state search warrant for that residence. A team of agents (10 or more) executed the "no-knock" warrant on March 28, 2013. After surrounding the house, a group of agents at the front began using breaching tools to cut through an outer security door. During this process someone in the residence opened the front door and then immediately slammed it shut.

It took the agents some one and a half to two and a half minutes to pry their way into the residence, where they immediately detected the odor of burnt marijuana and observed firearms and drug paraphernalia in plain view. One of the agents who first gained entry then spotted someone (defendant Hampton) fleeing toward the rear of the residence and shouted "runner!" to other agents stationed outside. Defendant

---

[1] The resident, known only to the agents as "Jeezy," exited the residence and sold crack cocaine to a CNT informant in view of surveilling officers. "Jeezy" has been indicted as one of defendant Hampton's codefendants, Jason Lawrence Mitchell. The agents did not encounter defendant at the residence prior to the execution of the search warrant and did not know that he would be there.

tripped and fell when he reached the rear steps and was immediately seized. The agents frisked him and removed from his pockets $2,850 in cash and a set of keys. They determined that the keys fit both the front door of the residence and a Chevrolet Impala parked in the driveway. Defendant gave the agents written consent to search the Impala, which led to the discovery of a large amount of cash and his driver's license in the center console.

Defendant indicated at the hearing that he was abandoning his argument that his consent to search the vehicle was somehow invalid. He nevertheless challenges its search under the theory that it was the product of his illegal arrest and the ensuing search of his pockets, which he insists occurred prior to the agents acquiring probable cause for his arrest arising from the discovery of mountains of drug evidence inside the residence.

The Court first finds that, even prior to their entry and observations inside the residence, the agents had probable cause to arrest defendant based simply upon his flight during the execution of a search warrant that issued because the agents had previously made controlled purchases of

drugs from that residence. But even if probable cause to arrest defendant was lacking until the officers effected their entry and saw ongoing drug activity inside the residence, the Court finds that the officers made those observations prior to seizing defendant and searching his pockets. The unrebutted testimony establishes that the agents made entry into the residence -- where they immediately smelled the odor of burning marijuana and saw weapons and drugs lying about -- *before* one of the officers cried "runner" and defendant was apprehended.[2] So, prior to defendant's capture -- or at least simultaneously with that event -- officers had seen drugs and guns scattered about the residence. This observation of open and notorious drug activity clearly gave the officers probable cause

---

[2] Defendant suggests that there was a conflict in the government witnesses' testimony, as Agent David Arbizo testified that he did not see defendant when he first made his entry, whereas Officer John Day, who was waiting outside the residence, testified that he heard an officer inside shout "runner" a couple seconds before defendant ran out the back door. The Court sees no conflict here. While Arbizo was *one* of the first agents to enter the residence, he was not the only member of the entry team. Officer Day was positive that he heard one of the agents shout "runner" before defendant's exit, though he couldn't say which member of the entry team made that exclamatory remark. Also, attached to defendant's brief is a copy of the investigative report prepared by CNT agents after the execution of the search warrant. Doc. 50-1 at 8-12. That report reflects that "[u]pon CNT agents *entering* 2106 Mell Street, one of the occupants, later identified as Antonio Hampton, tried to flee out the rear of the house." *Id*. at 9 (emphasis added). This report, prepared long before defendant filed his suppression motion, further supports Officer Day's testimony that the agents gained entry into the residence before Hampton made his attempt to flee.

to believe that defendant was likely involved in that criminal activity.[3] The search incident to defendant's arrest was perfectly lawful.

Even assuming that the officers lacked probable cause to arrest defendant at the moment they apprehended him, they unquestionably acquired that level of suspicion within seconds after his seizure. The sequence of events in this case unfolded rapidly. Thus, even if defendant made it out the back door before the agents gained knowledge that the house was filled with weapons and drugs, their discovery of that evidence within moments of his seizure would inevitably have led to his arrest and the recovery of the items in his pockets by lawful means. *Nixon v. Williams*, 467 U.S. 431, 448 (1984) (despite any initial illegality, evidence is admissible that "would inevitably have been discovered without reference to the police error or misconduct"); *Jefferson v. Fountain*, 382 F.2d 1286, 1295 (11th Cir. 2004) (inevitable discovery doctrine permits introduction of evidence that would have eventually come to light, even if the search that uncovered it was itself unconstitutional) (citing *United*

---

[3] It is unimportant to the analysis that the agents at the rear of the house had yet to observe that evidence, for it is "the collective knowledge of the officers [that] determines probable cause." *United States v. Astling*, 733 F.2d 1446, 1460 (11th Cir. 1984).

*States v. Terzado-Madruga*, 897 F.2d 1099, 1114 (11th Cir. 1990)); *United States v. Solomon*, 211 WL 1704721 at *15 n. 7 (M.D. N.C. May 4, 2011) (cash discovered in defendant's pockets prior to lawful arrest would have inevitably been discovered, since the police had authority to detain him while searching his residence pursuant to a warrant and they ultimately found evidence that independently developed probable cause to arrest him).

For all of these reasons, defendant's motion to suppress (doc. 50) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 5th day of November, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**